ORIGINAL

FILED
CLERK, U.S. DISTRICT COURT

OCT ⎯ 7 2013

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.*<br>AKBAR ATTARY, M.D..<br><br>Relator,<br><br>vs.<br><br>RICHARD CHUNG, an individual;<br>CALIFORNIA WILSHIRE MEDICAL<br>MANAGEMENT CO., INC.,<br>a California corporation;<br>AKBAR ATTARY MEDICAL, INC.,<br>a California corporation; and<br>DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. **CV13-07410** —ABC (RZx)<br><br>**COMPLAINT UNDER FALSE<br>CLAIMS ACT AND DEMAND FOR<br>JURY TRIAL**<br><br>**FILED UNDER SEAL** |

LODGED
CLERK, U.S. DISTRICT COURT

OCT ⎯ 7 2013

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Clerk, US Dist Court

OCT ⎯ 7 2013

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

LA/238096-1 33096-001

1

2:13CV07410-00003

1  MATTHEW L. KINLEY (Bar No. 144046)
   E-Mail: mkinley@tldlaw.com
2  PAMELA K. TAHIM (Bar No. 239717)
   E-Mail: ptahim@tldlaw.com
3  TREDWAY, LUMSDAINE & DOYLE LLP
   3900 Kilroy Airport Way, Suite 240
4  Long Beach, California 90806
   Telephone:  (562) 923-0971
5  Facsimile:  (866) 298-9666

6  Attorneys for Relator Akbar Attary, M.D.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.*<br>AKBAR ATTARY, M.D.<br><br>Relator,<br><br>vs.<br><br>RICHARD CHUNG, an individual;<br>CALIFORNIA WILSHIRE MEDICAL<br>MANAGEMENT CO., INC.,<br>a California corporation; and<br>AKBAR ATTARY MEDICAL, INC.,<br>a California corporation,<br><br>Defendants. | Case No. CV13-07410<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. SECTION 3730(b)(2)**<br><br>**DO NOT PLACE IN PRESS BOX**<br>**DO NOT ENTER ON PACER** |

**FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL**

Relator Akbar Attary ("Relator") alleges as follows:

**I.**

**INTRODUCTION**

1.     This is a *qui tam* action brought on behalf of the United States of America by Relator Akbar Attary against Defendants for treble damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. section 3279, which

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

1  provides treble damages and civil penalties against anyone who, through fraud or

2  falsity, files—or causes to be filed—a false claim to the government.

3       2.     This action arises from fraudulent claims in the form of bills to

4  Medicare for medical services not actually provided and medical services not

5  medically necessary that Defendants submitted to the United States government

6  alleged herein, and its agencies, the U.S. Department of Health and Human Services

7  ("HHS") and Centers for Medicaid and Medicare Services ("CMS"), in order to

8  obtain undeserved funds.

9       3.     Relator has standing to bring this *qui tam* action on behalf of the United

10  States.

11       4.     The Federal False Claims Act, pursuant to 31 U.S.C. section 3730(b)(2)

12  requires this complaint to be filed under seal and remain sealed for a minimum of

13  sixty days without service on the Defendants during that period to allow the

14  government to determine whether they will join the action.

15       5.     As required by the False Claims Act, 31 U.S.C. section 3730(b)(2), the

16  Relator has provided to the Attorney General of the United States and to the United

17  States Attorney for the Central District of California a statement of all material

18  evidence and information related to the complaint.  This disclosure statement is

19  supported by substantially all material evidence known to Relator at his filing

20  establishing the existence of Defendants' false claims.  Because the statement

21  includes attorney-client communications and work-product of Relator's attorneys,

22  and is submitted to the Attorney General and to the United States Attorney in their

23  capacity as potential co-counsel in the litigation, the Relator understands this

24  disclosure to be confidential.

25  **II.**

26  **PARTIES**

27  A.    **The Relator**

28       5.     Relator is a licensed physician in internal medicine in the State of

1 | California.  Relator brings this *qui tam* action for violations of the False Claims Act

2 | alleged below on behalf of himself, the United States, and its respective agencies.

3 |      6.     Relator resides in Orange County, California and is 73 years of age.  As

4 | detailed below, Relator was formerly an employee of Defendant California Wilshire

5 | Medical Management Co., Inc. ("California Wilshire") located in Los Angeles

6 | County, California.

7 |      7.     Relator is an individual with independent, direct, unique and personal

8 | first-hand knowledge of the unlawful practices of Defendants.

9 | **B.**    **The Defendants**

10 |      8.     Defendant California Wilshire is, and at all times herein mentioned

11 | was, a corporation duly organized and existing under the laws of the State of

12 | California with its principal place of business in Los Angeles County, California.

13 |      9.     Plaintiff is informed and believes and thereon alleges that Defendant

14 | Richard Chung ("Chung") is an individual who is the owner of California Wilshire

15 | Medical Management Co., Inc. doing business in Los Angeles County, California.

16 |      10.    Defendant Chung is, and at all times herein mentioned was, the alter-

17 | ego of Defendant California Wilshire (collectively referred to as "Defendants" or

18 | individually referred to as a "Defendant"), and there exists, and at all times herein

19 | mentioned has existed, a unity of interest and ownership between such Defendants

20 | such that any separateness has ceased to exist, in that Defendants used the assets of

21 | the company for personal use, caused assets of the company to be transferred to

22 | them without adequate consideration, and withdrew funds from the company for

23 | personal use.

24 |      11.    Defendant California Wilshire is, and at all times herein mentioned

25 | was, a mere shell, instrumentality, and conduit through which Defendant Chung

26 | carried on his individual business in the corporate name and to the detriment of

27 | Relator, exercising complete control and dominance of such business to such an

28 | extent that any individuality or separateness of Defendant California Wilshire and

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

1    Defendant Chung does not, and at all times herein mentioned, did not exist.

2       12.    Adherence to the fiction of the separate existence of Defendant

3 California Wilshire as an entity distinct from Defendant Chung would permit abuse

4 of the corporate privilege and would sanction a fraud and perpetuate injustice.

5       13.    Defendant Akbar Attary Medical, Inc. is a medical corporation duly

6 organized under the laws of the State of California with its principal place of

7 business in Orange County, California.

8       14.    Defendant Chung and Defendant California Wilshire established

9 Defendant Akbar Attary Medical, Inc. to operate the fraudulent scheme detailed in

10 this Complaint.  Specifically, Defendants Chung and California Wilshire submitted

11 false claims to the United States Government under the name of Akbar Attary

12 Medical, Inc.

13       15.    Defendant Akbar Attary Medical, Inc. is, and at all times herein

14 mentioned was, a mere shell, instrumentality, and conduit through which

15 Defendants Chung  and California Wilshire carried on business in the corporate

16 name and to the detriment of Relator, exercising complete control and dominance of

17 such business to such an extent that any individuality or separateness of Defendant

18 California Wilshire, Defendant Chung, and Defendant Akbar Attary Medical, Inc.

19 does not, and at all times herein mentioned, did not exist.

20       16.    Adherence to the fiction of the separate existence of Akbar Attary

21 Medical, Inc. as an entity distinct from Defendant Chung and Defendant California

22 Wilshire would permit abuse of the corporate privilege and would sanction a fraud

23 and perpetuate injustice.

### III.

### JURISDICTION AND VENUE

26       17.    This Court has jurisdiction over Causes of Action ONE through FIVE,

27 which are brought under the Federal False Claims Act pursuant to 28 U.S.C.A. §§

28 1331 and 1345, and 31 U.S.C.A. §§ 3730, 3732(a).

LA/230677-4 33096-001            4

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

18.     Further, this Court has subject matter jurisdiction over this action because Relator is the original source of all facts which form the basis of this Complaint. Relator has direct and independent knowledge of the information on which the allegations in this Complaint are based. Relator has voluntarily provided this information to the Government prior to filing this action.

19.     This Court has *in personam* jurisdiction over Defendants because each regularly conducts business in California and because each of the acts complained of herein occurred in California.

20.     Venue is proper in this Court with respect to each Defendant pursuant to 28. U.S.C. sections 1391(b) and (c) because each has regularly transacted business within this District, is subject to personal jurisdiction in this District, and because a substantial part of the events giving rise to the claims alleged herein occurred in this District.

21.     To Relator's knowledge, jurisdiction over this action is not barred by 31 U.S.C.A. § 3730(e): there is no civil suit or administrative proceeding involving the allegations of this complaint to which the United States is a party; there has been no public disclosure of these allegations or transactions; and Relator is an original source of the information upon which these allegations are based.

## IV.

## FACTS COMMON TO ALL COUNTS

A.     **The Law**

22.     The False Claims Act provides, in part, that any entity that (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; or (2) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim, is liable to the United States for damages and penalties. 31 U.S.C. §§ 3729(a)(1)-(2), amended by, 31 U.S.C. §§ 3729(a)(1)(A)-(B).

23.     The Anti-Kickback Act, 42 U.S.C. § 1320a-7b, arose out of

congressional concern that payoffs to those who can influence healthcare decisions would result in goods and services being provided that are medically unnecessary, of poor quality, or even harmful to a vulnerable patient population.  To protect the integrity of the program from these difficult-to-detect harms, Congress enacted a per se prohibition against the payment of kickbacks in any form, regardless of whether the particular kickback gave rise to overutilization or poor quality of care.

24.     The Anti-Kickback Act prohibits any person or entity from making or accepting payment to induce or reward any person for referring, recommending or arranging for federally funded medical services, including services provided under the Medicare and Medicaid programs:

> "(b) Illegal remunerations
> (1) whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind -
> (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
> (B) in return for purchasing, leasing, ordering or arranging for or recommend purchasing, leasing or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both. 42 U.S.C. § 1320a-7b(b). Violation of the statute can also subject the perpetrator to exclusion from participation in federal health care programs and, effective August 6, 1997, to civil monetary penalties of $50,000 per violation and three times the amount of remuneration paid. 42 U.S.C. § 1320a-7(b)(7) and 42 U.S.C. § 1320a-7a(a)(7)."

25.     In 2010, Congress amended the Anti-Kickback Act to clarify that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the FCA]." Patient Protection and Affordable Care Act of 2010 (PPACA), Pub. L. No. 111-148 § 6402(f), 124

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

Stat. 119, 759 (to be codified at 42 U.S.C. § 1320a-7b(g)).

**B.    The Medicare Program**

26.    Title XVIII of the Social Security Act, 42 U.S.C. section 1395 *et seq.* (1999) established the Health Insurance for the Aged and Disabled Program, popularly known as the Medicare program.

27.    The Secretary of HHS administers the Medicare and Medicaid programs through CMS, a component of HHS.

28.    The Medicare program is comprised of four (4) parts, Medicare Parts A, B, C, and D.  Only Medicare Part B is directly at issue in this case.  Medicare Part B provides federal government funds to help pay for, among other things, doctors providing services to Medicare beneficiaries.

29.    Medicare Part B is funded by insurance premiums paid by enrolled Medicare beneficiaries and contributions from the federal treasury.  Eligible individuals who are age sixty-five (65) or older or disabled may enroll in Part B to obtain benefits in return for payments of monthly premiums as established by HHS. However, payments under the Medicare Program are often made directly to service providers rather than to the patient (the "beneficiary").  This occurs when the provider accepts assignment of the right to payment from the beneficiary.  In that case, the provider submits its bill directly to Medicare for payment.  In the instant case, Defendant California Wilshire submitted bills directly to Medicare for payment of claims for medical services rendered by employees of Defendant California Wilshire.

**C.    The Claims Process**

30.    The United States provides reimbursement for Medicare claims through CMS. CMS, in turn, contracts with private insurance carriers to administer, process and pay Part B claims from the Federal Supplementary Medical Insurance Trust Fund (the Part B Trust Fund).  In this capacity, the carriers act on behalf of CMS. During the relevant time period of this Complaint, Defendant California Wilshire

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

1  submitted claims to the current Part B Carrier in California, Palmetto GBA J1.

2      31.    The Medicare Program, through the Part B Carrier, pays a significant

3  portion of every claim.  The Medicare beneficiary is required to pay the balance

4  owed the provider.  The beneficiary's payment is sometimes referred to as "co-pay."

5  Beneficiaries also pay deductibles.  During the relevant period of this Complaint,

6  Defendant California Wilshire exempted beneficiaries from paying "co-pays" and

7  deductibles by having them sign a "Hardship Agreement," discussed below.

8      32.    In order to bill the Medicare Program, a provider must submit a paper

9  claim form called a CMS 1500 (formerly known as a HCFA 1500) or submit the

10  claim electronically.  When the CMS 1500 is submitted, the provider certifies that

11  the services for which the claim is submitted were "medically indicated and

12  necessary for the health of the patient."  When the provider executes an Electronic

13  Data Interchange (EDI) Enrollment Form, the provider agrees to electronically

14  submit claims "that are accurate, complete and truthful," among other things.

15      33.    Providers complete the CMS 1500 form using unique identifying

16  numbers issued to them by CMS and Medicare Contractors.  The National Provider

17  Identifier (NPI) is a 10 digit identifier issued by CMS that all providers must use in

18  "standard transactions."  (45 C.F.R. §162.410(a)(2)).  Among the "standard

19  transactions" are "health care claims." (45 C.F.R. §162.1102).  "Health care claim"

20  includes a "request to obtain payment." (45 C.F.R §162.1101(a)).  "Payment"

21  includes information transmitted to receive "reimbursement for the provision of

22  health care." (45 C.F.R. §164.501).

23      34.    Medicare contractors also issue a Medicare-only number known as the

24  Provider Transaction Access Number (PTAN).  (Medicare Program Integrity

25  Manual § 15.14.8.)  Every participating Federal Health Program provider is issued a

26  PTAN for each entity he works for.  The PTAN identifies who rendered services to

27  a Medicare Beneficiary in the Medicare claims processing system.  Together, the

28  NPI and PTAN identify a physician provider in the Medicare program and enable

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

1 the provider to obtain reimbursement for medical services provided.  Individual
2 providers will have one NPI but may have more than one PTAN, depending on the
3 number of medical groups and Medicare contractors with whom they work.

4       35.    The provider must also state that the Current Procedural Terminology
5 (CPT) numeric codes used by the provider on the claim accurately describe the
6 procedures or services rendered for which it is billing Medicare.  The CPT is a
7 listing of descriptive terms and identifying codes for reporting medical services and
8 procedures performed by providers published annually by the American Medical
9 Association and are designed to provide common classifications of procedures and
10 services performed by health care providers in filing claims.

11 **D.**    **Relevant CPT Code Descriptions**

12 **97001** "Physical Therapy Evaluation"

- a comprehensive history
- physical exam and systems review
- performance of tests and measures to develop a plan for the course of treatment
- examination of medical history
- test and measurement of strength, range of motion, balance and coordination, posture, muscle performance, respiration, and motor function
- treatment plan
- ***Medical Payment: 80.69***

**97124** "Massage, including effeurage, petrissage and/or tapotement (stroking, compression, percussion)"

- ***Medical Payment: 28.65***

**97032** "Electrical stimulation (manual), each 15 minutes"

- ***Medical Payment: 20.81***

**97110** "Therapeutic procedure, one or more areas, each 15 minutes, therapeutic exercises to develop strength and endurance, range of motion and flexibility."

- ***Medical Payment: 34.93***

**97530** "Therapeutic activities, direct (one-on-one) patient contact by the provider (use of dynamic activities to improve functional each 15 minutes"

- ***Medical Payment: 38.5***

**96360** "Intravenous infusion, hydration; initial, 31 minutes to 1 hour"

- ***Medical Payment: 66.33***

**96361** "Intravenous infusion, hydration; each additional hour (List separately in addition to code for primary procedure)"

- ***Medical Payment: 17.13***

**97035** "Application of a modality to 1 or more areas; ultrasound, each 15 minutes"

- ***Medical Payment: 13.51***

36.     All healthcare providers must comply with applicable statutes, regulations and guidelines in order to be reimbursed by Medicare Part B. A provider has a duty to have knowledge of the statutes, regulations and guidelines regarding coverage for the Medicare services, including, but not limited to, the following:

a. Medicare covers only reasonable and necessary medical services. 42 U.S.C. § 1395y(a) (1) (A); and

b. Health care services are provided economically, and then, only when, and to the extent, they are medically necessary. 42 U.S.C. § 1320c-5(a) (1).

37.     The federal Medicare regulation excludes from payment services that are not reasonable and necessary. 42 C.F.R. § 411.15(k)(1).

38.     The Secretary of HHS is authorized to define what services meet the criteria of reasonable and necessary. 42 U.S.C. § 1395ff(a). HHS issues a Medicare Benefit Policy Manuals (MBPM) which is distributed to all Medicare providers to inform them of its reimbursement policies and procedures.  HHS also provides

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

1  similar manuals to fiscal intermediaries ("the Intermediary Manual") and to

2  Medicare carriers ("the Carrier Manual").  These manuals (collectively, "the

3  Medicare Manuals"), along with other publications, including but not limited to

4  National Coverage Determinations (NCDs) , are essential sources of information

5  from CMS to providers, intermediaries, and carriers regarding Medicare coverage

6  policies.

7      39.    The MBPM sets forth what physical therapy services are and are not

8  covered by Medicare.  (MBPM Chapter 15, Section 220.1, 5-10-13)

9      40.    As detailed below, Defendants submitted and/or caused claims to be

10 submitted to Medicare Part B for services they purportedly provided to

11 beneficiaries.

**V.**

**<u>DEFENDANTS SUBMITTED OR CAUSED TO BE SUBMITTED FALSE</u>**

**<u>AND FRAUDULENT CLAIMS TO MEDICARE</u>**

15     41.    From around 1999 to the present, Defendants operated a scheme to

16 submit false claims to Medicare under the guise of a medical clinic known as

17 California Wilshire Medical Management Co., Inc. ("California Wilshire").

18 Defendants knowingly submitted false or fraudulent claims, or caused the

19 submission of false or fraudulent claims, for medical services that were

20 inappropriately provided to patients, or that were not medically necessary.  Those

21 false claims were paid by Medicare.

22     42.    Defendants acted with actual knowledge, deliberate ignorance or

23 reckless disregard of the laws, regulations and guidance applicable to Federal

24 healthcare programs when submitting claims for medical services.  The Defendants

25 received thousands of dollars in Medicare reimbursement for these services.

26     43.    Specifically, in operating California Wilshire, Defendants (1) submitted

27 CPT codes that overstated medical services provided; (2) charged Medicare for

28 medically unnecessary services; and (3) submitted claims for reimbursement for

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

LA/230677-4 33096-001                           11

1 │ medical services that were noncompliant with minimum quality of care standards

2 │ required of those medical services.

3 │ **A.   Relator's Employment at California Wilshire**

4 │     44.   Relator became involved with California Wilshire in or around

5 │ September of 2012 when he placed his resume on the internet seeking employment

6 │ as an internal medicine physician with a subspecialty in Gastroenterology.  In or

7 │ around September 2012, a representative from Defendant California Wilshire found

8 │ Relator's resume on the internet and contacted Relator to tell him that there was a

9 │ position available in his field at Defendant California Wilshire.

10 │     45.   In or around September of 2012, Relator met with Defendant Chung in

11 │ his office at California Wilshire in Los Angeles, California to discuss what Relator's

12 │ employment with Defendant Wilshire entailed.  Defendant Chung explained that

13 │ Relator would be practicing internal medicine at California Wilshire because the

14 │ clinic needed a medical professional to provide medical services.  Defendant Chung

15 │ also said that Relator would see between 10-15 patients per day and that as an

16 │ employee of California Wilshire, Relator was expected to refer his patients

17 │ exclusively to California Wilshire's ancillary X-ray, ultrasound, and cardiology

18 │ departments should they require any of those services.

19 │     46.   Defendant Chung told Relator that Defendant Chung was going to

20 │ apply for a Medicare number under Relator's name and that Defendant Chung was

21 │ going to set up a corporation for Relator to practice medicine within Defendant

22 │ California Wilshire.

23 │     47.   Defendant Chung applied for and received a Provider Transaction

24 │ Access Number (PTAN) in Relator's name in order to submit claims to Medicare.

25 │ Relator's National Provider Identifier (NPI) is 1104181023.  Defendants had

26 │ exclusive control over how PTAN # GM787Z was used to bill Medicare.

27 │ Defendants used Relator's PTAN without Relator's knowledge or consent to indicate

28 │ that Relator was providing medical services that were being billed.  Relator did not

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

1   even know what Relator's PTAN was while working at Defendant California

2   Wilshire because Defendants had exclusive control over how it was used to submit

3   claims for reimbursement.  On several occasions, Relator asked Defendant Chung

4   for Relator's PTAN and Defendant Chung refused to give it to him.

5         48.   On April 18, 2013, Relator's counsel wrote CMS a letter requesting

6   Relator's Medicare-Number.  On April 23, 2013, a representative from Medicare

7   Provider Enrollment at Palmetto GBA replied and included all PTANs registered to

8   Relator.  The PTAN that Defendant Chung obtained for Relator was GM787Z.

9   Subsequently, Relator and Relator's counsel filed a Medicare Enrollment

10  Application to have PTAN # GM787Z voluntarily deactivated.  CMS approved of

11  the request and confirmed the deactivation in writing on August 1, 2013.

12        49.   Defendant Chung told Relator that California Wilshire had been

13  operating its business in the manner described above for upwards of sixteen years.

14  Prior to Relator's employment with California Wilshire, Defendant Chung made use

15  of at least three other licensed internal medicine physicians.  Plaintiff is informed

16  and believes that the physician immediately prior to him was Dr. Eric Lim, M.D.

17        50.   Other than Relator, the clinic employed 15-20 employees, all of whom

18  were of Korean descent.

19        51.   In or around September of 2012 Relator entered into an agreement with

20  Defendant California Wilshire to provide medical services as an internal medicine

21  physician according to the terms of employment that he discussed with Defendant

22  Chung.

23        52.   On or about November 1, 2012, Relator began working for Defendant

24  California Wilshire to provide internal medicine services to patients, relying on the

25  representations that Defendant Chung had made about the job.  By this date,

26  Defendant Chung had applied for Relator's Medicare number on Relator's behalf

27  and set up a corporation using Relator's information, known as Akbar Attary

28  Medical, Inc.

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

53.   Relator also cooperated with Defendant Chung to obtain a Medicare provider number to bill Medicare and provided Defendant Chung with information and signatures required to set up the medical corporation, Akbar Attary Medical, Inc.

54.   Based upon Relator's agreement with Defendant Chung and Defendant Chung's representations, Relator believed that the Medicare number would be used to bill for services and prescriptions that Relator would administer using his own discretion.  Further, Relator believed that Akbar Attary Medical, Inc. would be used to provide only medical services that patients needed.

55.   Within a few months after Relator began working at Defendant California Wilshire, Relator discovered that Defendant California Wilshire and Defendant Chung were defrauding Medicare by (1) improperly waiving copays and deductibles; (2) submitting codes for Medicare reimbursement that overstated medical services provided; (3) charging Medicare for medically unnecessary services; and (4) submitting claims for reimbursement for medical services that were noncompliant with minimum quality of care standards required of those medical services.

**B.    Overview of Defendants' Fraudulent Scheme**

56.   Beginning in or around 1999, Defendants submitted false or fraudulent claims to Medicare for medical services that were not reasonable or necessary under Medicare's requirements.

57.   Defendants operated their scheme by using aggressive marketing tactics to recruit large groups of potential patients, who were predominantly of Korean descent.   These Korean patients regularly loitered around California Wilshire's premises to socialize and to dine in the clinic's kitchen.  While they loitered around California Wilshire's premises, nurses would accompany the patients throughout the clinic to request medical services even though the patients did not display symptoms of any medical ailments or have any medical complaints.

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

58.    These patients would frequently visit Relator's office, accompanied by a California Wilshire nurse, and request diagnostic tests and physical therapy services.  There was a significant language barrier between Relator and the patients. The nurses were responsible for translating the patients' communications.

59.    Defendant California Wilshire instructed their employees to administer all requested medical services to increase the number of claims submitted to Medicare, without regard to whether the services were medically necessary or whether the services were administered in accordance with Medicare's quality standards.

60.    Defendants would instruct Relator to sign nearly 30-50 pre-written medical charts per day under "Examiner and Provider" even though Relator never examined those patients.

61.    Defendants also distributed written materials to their employees that incorrectly stated which CPT codes applied to the listed medical services.  These written materials caused dishonest reporting, commonly referred to as "upcoding." Specifically, it led to employees reporting CPT codes that exaggerated the extent of services performed.

**C.    Specific Examples of California Wilshire's Medicare False Claims**

♦      **Use of Relator's PTAN Without Relator's Consent**

62.    Per the terms of the Employment Agreement between Relator and Defendants, Defendant Chung was to obtain a Medicare Provider number for Relator to practice medicine at California Wilshire.

63.    Defendant Chung obtained the PTAN # GM787Z from Palmetto GBA in order to bill for medical services by using Relator's medical license.

64.    Relator believed that the PTAN would be used to bill for medical services using his own discretion and for services that were medically necessary.

65.    However, Defendants made use of Relator's PTAN to bill for medical services without Relator's discretion and for medical services that were not actually

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

1   provided.

2   ◆   **Failure to Collect the Medicare Co-Payment**

3   66.   A significant weapon in the battle to prevent Medicare fraud is the 20%

4   Co-Pay required of the Medicare patient.  This co-payment is required unless the

5   patient meets certain defined hardship requirements.  The co-payment is designed to

6   prevent Medicare fraud by drawing objection from a patient who is overcharged or

7   provided with unnecessary medical equipment or services.  When the patient has to

8   pay 20% of the cost, he or she is more likely to object to unnecessary services,

9   medicine or equipment. In order to circumvent this Medicare fraud deterrent,

10   Defendants routinely waived the 20 percent co-pay regardless of whether the patient

11   met the Medicare and/or Medicaid hardship requirements.  Each time these

12   Defendants waived a co-pay for a patient who did not satisfy the hardship criteria,

13   any claim for payment submitted in connection therewith was a false claim, because

14   it misrepresented the actual price of the services provided.

15   67.   To induce patients to request medical services, Defendants exempted

16   all patients from having to pay a "co-pay" or deductible to cover the costs not

17   covered by Medicare.  Defendants did this by having all patients treated at

18   California Wilshire sign a "Hardship Agreement" which stated the following:

19   "By my signature below I am requesting that my doctor reduce [sic]
20   any customary fees charged so as to allow me to receive medical care.  My
     financial circumstances are such that if I were to pay the customary fees
21   charged would be forced due to economic reasons not to receive care.

22   I recognize that any agreement made to assist me is purely confidential
     and that my fee arrangement would be different than that which is standard in
23   the office.

24   If my insurance company policy demands full payment of the
     deductible or co-payments, I agree that it is my responsibility to notify my
25   insurance carrier that due to economic hardship I am only making partial
26   payment."

27   68.  The Hardship  Agreement led to the excessive use of services offered by

28   the Medicare program and is a violation of the Medicare and Medicaid Anti-

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

1     Kickback statute.

2     69.    The fraudulent scheme to waive co-payments by California Wilshire

3 resulted in the submission of false claims for payment by California Wilshire for

4 each Medicare patient for whom California Wilshire waived the co-pay without

5 hardship documentation.  These false claims were submitted by Defendants to

6 Medicare for at least the last sixteen years until the present and can be identified

7 from the patient files and records at California Wilshire that Relator has seen in his

8 former position with California Wilshire.

9     ♦     **Claims to Medicare for Unnecessary Physical Therapy Services**

10     70.    Defendants regularly billed Medicare for medically unnecessary

11 physical therapy services which led to the upcoding of CPT Codes 97001, 97124,

12 97032, 97110, and 97530.

13     71.    Every day, Defendants sent between eight and ten patients to Relator to

14 obtain physical therapy referrals and to receive a physical therapy treatment plan.

15 Some of these patients were from the large group of Korean individuals who would

16 loiter around California Wilshire on a daily basis to socialize and dine in the clinic's

17 kitchen.  These patients were all over the age of 65.

18     72.    Many of these patients had already been seen by their own family

19 physicians, yet Defendant California Wilshire instructed Relator to conduct a

20 therapy evaluation and to authorize a physical therapy treatment plan.  California

21 Wilshire never sent any recommendations to the patients' family physicians based

22 on these evaluations.

23     73.    Defendant California Wilshire instructed Relator to evaluate these

24 patients quickly.  Relator only saw them for five to ten minutes, yet Defendants

25 instructed Relator to bill Medicare for forty-five to sixty minutes per consultation.

26     74.    California Wilshire instructed its physicians to fill out and sign

27 Physical Therapy Treatment plans that satisfied Medicare's minimum requirements.

28 The Medicare Benefit Policy Manual requires Physical Therapy Evaluations to

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

include the (1) diagnosis; (2) long term treatment goals; and (3) type, amount, duration and frequency of therapy services.  The diagnoses and tests on the Physical Therapy Evaluations were pre-determined by California Wilshire and identical in most cases.  These practices led to the up-coding of CPT Code 97001 (Physical Therapy Evaluation).  The "Plan of Treatment for 3 Month" was also identical for the patients. The specific procedures ordered were consistently Electric Stimulation, Soft Tissue Massage, Therapeutic Procedure, and Therapeutic Activity.

75.   Though the patients did not actually have a need for physical therapy, they all received an identical course of treatment at the clinic's ancillary physical therapy department. Patients received six weeks of cervical spine pain treatment followed by six weeks of shoulder pain treatment followed by six weeks of lower back pain treatment followed by six weeks of knee pain treatment followed by six weeks of ankle pain treatment.

76.   Further, California Wilshire instructed Relator to sign nearly 30-50 pre-written physical therapy visit charts per day under "Examiner and Provider" even though Relator never examined those patients or performed procedures on those patients.  The ordered physical therapy tests on these medical charts were written in advance and tailored to meet Medicare's requirements. The subjectives and objectives were typed in advanced, without regard to whether they would be different on a particular date. Patients consistently received 15 minutes of Electric Stimulation (CPT Code 97032),  30 minutes of Soft Tissue Massage (CPT Code 97124),  15 or 30 minutes of Therapeutic Procedures (CPT Code 97110), and 15 or 30 minutes Therapeutic Activities (CPT Code 97530).  Though the patients did not have a medical need for physical therapy, they all received identical courses of treatment at the clinic's ancillary physical therapy department.  Patients did not object to these treatments because they had all signed the Hardship Agreements, as discussed above, and consequently did not have to pay the otherwise required 20% co-payment.

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

♦   **Claims to Medicare for Intravenous Fluids**

77.   Defendants sent upwards of eight patients per day to Relator to receive intravenous fluids even though these patients did not display any symptoms indicating that they needed intravenous fluids, which led to the upcoding of CPT Codes 96360 and 96361.

78.   These patients often complained about having acute or chronic gastrointestinal disorders, yet Relator frequently saw them enjoying meals in California Wilshire's kitchen.

79.   Patients who requested intravenous fluids were often accompanied by a California Wilshire nurse who provided interpretation services because the patients were of Korean descent and faced a significant language barrier.

80.   When Relator reviewed these patients' medical records, he saw that they had been receiving intravenous fluids at California Wilshire on a regular basis every month for years.  Relator also observed that the follow-up notes for the intravenous fluid treatments were identical and false.  These medical records indicated that the patients appeared to be chronically dehydrated, with poor skin turgor, having dry mucous membranes, and suffering from orthostatic hypotension. The patients who requested intravenous fluids never displayed symptoms of these conditions.

81.   When Relator questioned nurses at California Wilshire regarding these seemingly unnecessary intravenous fluid prescriptions, the nurses would state that the orders were "from the boss."

82.   When Relator questioned Defendant Chung regarding the seemingly unnecessary intravenous fluid prescriptions, Defendant Chung got irritated and stated: "There are many physicians that believe that IV fluid infusion improves patient fatigue."

83.   Additionally, Defendant California Wilshire instructed Relator to "upcode" the intravenous fluid dosages and types that were prescribed.  For

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

1   example, if a patient received 500 cc of Dextrose-5 over a period of less than two

2   hours, Defendant California Wilshire instructed Relator to bill for 1000 cc of

3   Multivitamins.

4       84.    These practices led to the up-coding of CPT codes 96360 (Intravenous

5   infusion, hydration; initial, 31 minutes to 1 hour) and 96361 (Intravenous infusion,

6   hydration, each additional hour).

7       ♦    **Claims to Medicare for X-Ray Reviews**

8       85.    Defendants regularly billed Medicare for X-ray readings and reports

9   that were not conducted in accordance with Medicare's quality standards.

10      86.    California Wilshire's ancillary X-ray department conducted X-rays on

11  California Wilshire's patients, many of whom had been referred to the department

12  by Relator.  Though California Wilshire did not have a licensed radiologist on staff,

13  California Wilshire frequently submitted bills to Medicare for the review and

14  interpretation of the X-rays.

15      87.    Because the X-ray reviews were conducted by staff members without

16  specialized training in radiology, they were not in accordance with Medicare's

17  quality standards for the interpretation of X-rays.

18      ♦    **Claims to Medicare for Medically Unnecessary Tests**

19      88.    Defendants regularly billed Medicare for diagnostic tests that were not

20  reasonable or necessary.

21      89.    California Wilshire's ancillary ultrasound department was staffed by a

22  Korean technician.  This technician would frequently request ultrasounds on patients

23  because of alleged suspicious pathologies.  However, upon conducting the

24  ultrasounds, no suspicious pathologies were ever discovered.  The ordering of

25  unnecessary ultrasounds led to the up-coding of CPT Code 97035.

26  ///

27  ///

28  ///

# FIRST CAUSE OF ACTION

## (False and/or Fraudulent Claims)

### (31 U.S.C. § 3729(a)(1))

90.   Relator repeats and re-alleges the preceding paragraphs as if fully set forth herein.

91.   The Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information presented or caused to be presented false or fraudulent claims for payment or approval to the United States.

92.   By virtue of the false or fraudulent claims made by the Defendants, the United States suffered damages and incurred investigative costs, and therefore is entitled to statutory damages under the False Claims Act, to be determined at trial, plus civil penalties, interest, and investigative costs.

## VI.

# SECOND CAUSE OF ACTION

## (False Records and Statements)

### (31 U.S.C. § 3729(a)(2))

93.   Relator repeats and re-alleges the preceding paragraphs as if fully set forth herein.

94.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information presented or caused to be presented false or fraudulent claims for payment or approval to the United States.

95.   The United States, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid and may continue to be paying or reimbursing for medically unnecessary physical therapy services, intravenous fluid prescriptions, ultrasound report interpretations, and x-rays administered to patients enrolled in Federal

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

1   Programs.

2        96.   As a result of Defendants' actions, as set forth above, the United States

3   of America has been, and may continue to be, severely damaged.

4   **VIII.**

5   **THIRD CAUSE OF ACTION**

6   **(Conspiracy to Defraud)**

7   **(31 U.S.C. § 3729(a)(3))**

8        97.   Relator repeats and re-alleges the preceding paragraphs as if fully set

9   forth herein.

10        98.   As detailed above, Defendants knowingly conspired, and may still be

11   conspiring, with health care professionals identified and described herein to commit

12   acts in violation of 31 U.S.C §§ 3729(a)(1) & (a)(2); 31 U.S.C. §§(a)(1)(A) &

13   (a)(1)(B).  Defendants and these health care professionals committed overt acts in

14   furtherance of the conspiracy as described above.

15        99.   As a result of Defendants' actions, as set forth above, the United States

16   has been, and may continue to be, severely damaged.

17   **IX.**

18   **FOURTH CAUSE OF ACTION**

19   **(False Statements to Conceal Obligations)**

20   **(31 U.S.C. § 3729(a)(7))**

21        100.   Relator repeats and re-alleges the preceding paragraphs as if fully set

22   forth herein.

23        101.   This is a claim for the recovery of monies paid by the United States to

24   the Defendants as a result of mistaken understandings of fact.

25        102.   Through the above-described acts and omissions, Defendants

26   knowingly made and used, and/or caused to be made and used, false records and

27   statements in order to conceal and/or decrease Defendants' obligations to pay or

28   transmit monies.

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

103.   The United States, acting in reasonable reliance on the truthfulness of the claims and the truthfulness of the Defendants' certifications and representations, paid the Defendants certain sums of money to which they were not entitled, and the Defendants are thus liable to account and pay such amounts, which are to be determined at trial, to the United States.

## X.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

104.   Relator repeats and re-alleges the preceding paragraphs as if fully set forth herein.

105.   This is a claim for the recovery of monies by which the Defendants have been unjustly enriched.

106.   By directly or indirectly obtaining Government funds to which it was not entitled, the Defendants were unjustly enriched, and are liable to account and pay such amounts, or the proceeds therefrom, which are to be determined at trial, to the United States.

## XI.

## SIXTH CAUSE OF ACTION

### (Fraud)

107.   Relator repeats and re-alleges the preceding paragraphs as if fully set forth herein.

108.   This is a claim for the recovery of monies paid by the United States to the Defendants as a result of fraud.

109.   Defendants knowingly, willingly, or recklessly submitted false or fraudulent claims, or caused the submission of false or fraudulent claims, for medical services that were inappropriately provided to patients, or that were not medically necessary.

110.   Defendants knowingly used, transferred, and possessed, without lawful

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

1 authority, the means of identification of another person, specifically, a Provider

2 Transaction Access Number (PTAM), that may be used alone or in conjunction with

3 any other information to identify a specific individual during and in relation to a

4 felony violation of 18. U.S.C. § 1347.  Specifically, Defendants falsely used the

5 PTAM of Relator when causing fraudulent claims to be submitted to Medicare as

6 referenced in the Counts above.

7      111.   The United States, acting in reasonable reliance on the truthfulness of

8 the claims and the truthfulness of the Defendants' certifications and representations,

9 paid the Defendants certain sums of money to which it was not entitled, and the

10 Defendants are thus liable to account and pay such amounts, which are to be

11 determined at trial, to the United States.

12      112.   As a result of Defendants' actions, as set forth above, the United States

13 has been, and may continue to be, severely damaged.

**XII.**

**SEVENTH CAUSE OF ACTION**

**(Attorneys' Fees and Costs)**

**(31 U.S.C. § 3730(d)(1))**

18      113.   Relator repeats and re-alleges the preceding paragraphs as if fully set

19 forth herein.

20      114.   This is a civil action for violations of the Federal False Claims act

21 brought by a private person.  If the Government decides to proceed with an action,

22 Relator shall be entitled to an amount for reasonable expenses plus attorneys' fees

23 and costs, pursuant to 31 U.S.C. § 3730(d)(1).

**XIII.**

**EIGTH CAUSE OF ACTION**

**(Proceeds of the Action or Settlement of the Claim)**

**(31 U.S.C. § 3730(d)(1))**

28      115.   Relator repeats and re-alleges the preceding paragraphs as if fully set

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

LA/230677-4 33096-001                    24

1    forth herein.

2        116.    This is a civil action for violations of the Federal False Claims act

3    brought by a private person.  If the Government decides to proceed with an action,

4    Relator shall be entitled to an amount of proceeds of the action or settlement of the

5    claim, in an amount to be determined at trial pursuant to 31 U.S.C. § 3730(d)(1).

6        **WHEREFORE** Plaintiff prays for a judgment against Defendants and each

7    of them as follows:

8        1.    That Defendants be ordered to cease and desist from submitting or

9    causing to be submitted any more false claims, or further violating the code sections

10    *infra*;

11        2.    That judgment be entered in Relator's favor and against Defendants in

12    the amount of each and every false of fraudulent claim, multiplied as provided for in

13    31 U.S.C. § 3729(a), plus a civil penalty of not less than five thousand ($5,000) or

14    more than ten thousand dollars ($10,000) per claim as provided by 31 U.S.C. §

15    3729(a), to the extent such multiplied penalties shall fairly compensation for losses

16    resulting from the various schemes undertaken by Defendants, together with

17    penalties for specific claims to be identified after full discovery;

18        3.    That Relator be awarded the maximum amount allowed pursuant to 31

19    U.S.C. § 3730(d), including reasonable attorneys' fees and litigation costs;

20        4.    That Defendants be ordered to disgorge all sums by which they have

21    been enriched unjustly by their wrongful conduct;

22        5.    That judgment be granted for Relators against Defendants for all costs,

23    including, but not limited to, attorneys' fees and costs in the prosecution of this suit;

24    and

25        6.    That Relators be granted such other and further relief as the Court

26    deems just and proper.

27    / / /

28    / / /

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

LA/230677-4 33096-001

25

1   **DEMAND FOR JURY TRIAL**

2          Relator, on behalf of himself and the United States, demands a jury trial on all

3   claims alleged herein.

4

5   DATED:  October __3__, 2013          TREDWAY, LUMSDAINE & DOYLE LLP

6                                                                    MATTHEW L. KINLEY

7                                                                    PAMELA K. TAHIM

8

9                                                        By: _____

10                                                              PAMELA K. TAHIM

11                                                              Attorneys for Relator Akbar Attary

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TREDWAY, LUMSDAINE & DOYLE LLP
3900 Kilroy Airport Way, Suite 240
Long Beach, California 90806
(562) 923-0971

LA/230677-4 33096-001

26